BANKERS TRUST COMPANY, Plaintiff, *v.* THE DENVER TRAMWAY
COMPANY, Defendant.

First Department, July 9, 1920.

**Mortgages — trust mortgage to secure bonds to be issued — mortgage providing for creation of sinking fund — when mortgagor should pay percentage into sinking fund on bonds pledged by it as collateral security.**

Where the terms of a trust mortgage executed by the defendant to secure bonds to be issued by it required the defendant to pay to the trustee yearly a certain percentage of the principal of bonds issued and outstanding, said payments to be used as a sinking fund for the redemption of bonds secured by the mortgage, the trustee is entitled to receive said percentage on all bonds which have been executed by the defendant and delivered to the trustee for certification and redelivered thereafter to the defendant or upon its order, including bonds which the defendant pledged as collateral security to a loan made to it by a bank and which the defendant directed the trustee to hold as custodian only.

When bonds have been issued, duly certified and delivered, not to the trustee but to a custodian for such disposition as the defendant may direct, they become " issued and outstanding " and so remain until canceled, retired or bought in under the sinking fund provision, and the defendant should pay to the trustee for the purposes of said fund the percentages agreed upon.

SMITH and GREENBAUM, JJ., dissent, with opinions.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*Charles C. Deming* of counsel [*L. A. Doherty* with him on the brief], *Alexander & Green*, attorneys, for the plaintiff.

*Guy Cary* of counsel [*Gerald Hughes* and *Howard S. Robertson* with him on the brief], *Shearman & Sterling*, attorneys, for the defendant.

CLARKE, P. J.:

The Bankers Trust Company is the trustee under a mortgage or deed of trust executed by the Denver City Tramway Company, the predecessor of the defendant, which assumed, ratified and confirmed said mortgage. The bonds authorized

thereunder amount to $25,000,000 to be known as its " First and Refunding Sinking Fund Mortgage, twenty-five-year, five per cent Gold Bonds," and the mortgage or deed of trust was denominated " First and Refunding Sinking Fund Mortgage." It provided:

" Article VI.   Sinking Fund.   As a Sinking Fund for the redemption of bonds secured hereby the Tramway Company covenants and agrees that it will yearly and every year beginning with the first day of November, 1914, up to and including the first day of November, 1923, pay to the Trustee a sum in gold coin of the United States of or equal to   *   *   *   one per cent (1%) of the principal of the bonds issued hereunder and then outstanding, and on each first day of November after the year 1923 pay to the Trustee a sum in like gold coin equal to two per cent (2%) of the principal of said bonds issued hereunder and then outstanding, and on each first day of November after the year 1914 pay to the Trustee an additional sum in like gold coin which shall be equal to the annual interest upon all the bonds purchased by said Trustee or drawn as hereinafter provided in this Article, to be applied by the Trustee, together with any other money in the hands of the Trustee derived from the sale of property covered by this mortgage which may not be otherwise used or applied under the provisions of Section 1 of Article V of this Indenture, to the redemption of said bonds; provided, however, that the Trustee shall have the right upon being furnished with funds by the Tramway Company for the purpose, to purchase bonds from time to time prior to November 1st, 1923, at a price not exceeding 105 and accrued interest, and after November 1st, 1923, at a price not exceeding 102½ and accrued interest, and the bonds so purchased shall be applied by the Trustee, unless otherwise directed by the Tramway Company, on account of the requirements of the Sinking Fund."

Immediately prior to the 1st day of November, 1916, there had been executed by the tramway company, certified by the trustee and delivered by it in pursuance of the covenants and terms of said mortgage or deed of trust, $11,800,500 principal amount of the bonds authorized and secured by said mortgage. Of said $11,800,500, there had been redeemed theretofore and held in the sinking fund $316,000, and there were outstanding

in the hands of the public $10,646,000. The balance, to wit, $838,500, prior to said 1st day of November, 1916, had been executed by the defendant, certified by the plaintiff and after delivery to defendant had been, as to $838,000 thereof, lodged by defendant with plaintiff, not as trustee, but simply as custodian for defendant, subject to the order of defendant and for such disposition or application as defendant might determine, and as to $500 principal amount thereof held and retained by the defendant unincumbered in its treasury. Prior to November 1, 1916, the defendant pledged $100,000 principal amount of said bonds with the Denver National Bank as collateral security for a certain demand promissory note executed and delivered by defendant and payable to the order of said Denver National Bank and notified plaintiff to hold $100,000 principal amount of said bonds for the account of said bank, whereupon plaintiff notified said defendant that as depository it held $100,000 principal amount of said bonds for the account of said bank. Subsequently, and on or about the 19th day of December, 1916, the defendant having paid said promissory note in full, said $100,000 principal amount of bonds were released from the pledge by said bank and returned to plaintiff as custodian for defendant.

During the period commencing April 1, 1918, and continuing to October 31, 1918, defendant pledged at various dates, various amounts of said bonds ranging from a minimum amount of $50,000 par value at one time to a maximum amount of $300,000 at another time to the First National Bank of Denver, Colo., and the International Trust Company, as collateral security for the payment of certain demand promissory notes executed and delivered at various times between said dates and payable to said bank and to said company respectively, and in connection with said pledges defendant directed the plaintiff to hold various amounts of said bonds for the account of and subject to the order of said bank and company.

On May 2, 1918, out of said $838,500 principal amount of said bonds, $540,000 par value were held by plaintiff as depositary for the account of and subject to the order of the First National Bank of Denver and $298,000 were held by plaintiff as custodian for the defendant, and $500 were held by defend-

ant in its treasury. Other transactions of the same kind were had. On November 1, 1918, $500,000 par value of said bonds were held by the plaintiff as collateral security for the payment of demand notes subject to the order of the First National Bank and the International Trust Company.

The plaintiff contends that all bonds which have been executed by the defendant, delivered by defendant to plaintiff as trustee for certification, certified by plaintiff as trustee and redelivered out of the possession of the trustee either to the defendant, or upon its order, or in accordance with any duty imposed upon the trustee by other provisions of the trust indenture, together constitute bonds issued and outstanding for the purpose of the sinking fund, and has demanded of the defendant payment into the sinking fund of the amount provided in the article of the trust mortgage heretofore quoted.

The defendant refused to comply upon the ground that the said bonds amounting to $838,500 were not issued and outstanding within the meaning of the trust deed because not in the hands of the general public.

It seems to me that when the bonds had been issued, duly certified and delivered, not to the trustee, but to a custodian for such disposition as the defendant might direct, they became " issued and outstanding " and so remained until canceled, retired or bought in under the sinking fund provision. They were and are at the disposition of the defendant and have been used time and again as collateral to loans, qualified title thereto, by way of lien, passing to the lenders. The fact that the money borrowed upon their security has been repaid from time to time, and the bonds so released from the specific lien, does not affect, in my opinion, the status so acquired, because the bonds could be used the next day for the like or other purposes and they have been so used. The provisions in respect to the sinking fund are intended to add to the attractiveness of the bonds for investment purposes. The scheme of the trust deed could be easily evaded by temporary return to the custodian over the one date, namely, November first, when the specified amount was payable to the trustee for the sinking fund upon issued and outstanding bonds, and immediate redelivery thereafter of the bonds as collateral.

The clear intention was to represent to investors that a definite amount would flow into the sinking fund to provide for ultimate redemption. When the bonds have once been issued and duly certified and delivered to a custodian subject to the orders and directions of the defendant they become and remain " issued and outstanding " within the meaning of the trust deed until definitely retired or bought in. It follows, therefore, that judgment should be entered for the plaintiff for the amount due under that interpretation of the trust deed, together with the costs.

DOWLING and PAGE, JJ., concur; SMITH and GREENBAUM, JJ., dissent.

SMITH, J. (dissenting):

The Denver Tramway Company is the successor of the Denver City Tramway Company. The Bankers Trust Compay is the successor of the Mercantile Trust Company, and the questions of law here arising are to be determined as if the Denver City Tramway Company was the defendant and the Mercantile Trust Company the plaintiff.

In the agreed statement of facts it appears that the defendant wanted to raise $25,000,000 upon mortgage bonds. A trust mortgage was, therefore, made to the plaintiff, and was in the usual form of a trust mortgage, transferring the property of the defendant for the purpose of securing the issue of these bonds. These bonds were to be executed by the defendant and certified by the plaintiff and then sold for the purpose of raising the moneys required. The controversy here arises over the provision as to a sinking fund and the trust company is making claim as against the defendant that more money should be paid to the trust company for the purpose of that sinking fund than the defendant is willing to pay or deems itself bound to pay under the provisions of this mortgage.

The provision for the sinking fund is provided in article 6 of the agreement and is in part as follows:

" As a Sinking Fund for the redemption of bonds secured hereby the Tramway Company covenants and agrees that it will yearly and every year beginning with the first day of November, 1914, up to and including the first day of November,

1923, pay to the Trustee a sum in gold coin of the United States of or equal to the present standard of weight and fineness, equal to one per cent (1%) of the principal of the bonds issued hereunder *and then outstanding,* and on each first day of November after the year 1923 pay to the Trustee a sum in like gold coin equal to two per cent (2%) of the principal of said bonds issued hereunder and then outstanding, and on each first day of November after the year 1914 pay to the Trustee an additional sum in like gold coin which shall be equal to the annual interest upon all the bonds purchased by said Trustee or drawn as hereinafter provided in this Article, to be applied by the Trustee, together with any other money in the hands of the Trustee derived from the sale of property covered by this mortgage which may not be otherwise used or applied under the provisions of Section 1 of Article V of this Indenture, to the redemption of said bonds; provided, however, that the Trustee shall have the right upon being furnished with funds by the Tramway Company for the purpose, to purchase bonds from time to time prior to November 1st, 1923, at a price not exceeding 105 and accrued interest, and after November 1st, 1923, at a price not exceeding 102½ and accrued interest, and the bonds so purchased shall be applied by the Trustee, unless otherwise directed by the Tramway Company, on account of the requirements of the Sinking Fund."

Before discussing this provision it may be well to note the situation under which the questions arising thereunder are presented. There has never been issued under this mortgage more than $12,000,000 of bonds. In fact, prior to the 1st day of November, 1918, the plaintiff demanded of the defendant one per cent upon $11,157,500 in bonds as issued and outstanding, five per cent upon $656,000 par value of bonds which had been purchased and deposited in the sinking fund. Of this $11,157,000 of bonds, those claimed as issued and outstanding, there were $838,500 of the bonds which were then in the custody of the plaintiff, held as custodian of the defendant. They were not outstanding bonds, because no one had any claim thereon. They had not been redeemed for the purpose of the sinking fund. They had been authorized by the defendant and certified by the plaintiff and were held by the trust

company for temporary uses of the defendant as collateral to moneys that should be borrowed at any time, and $500 represented thereby was held as cash as the absolute property of the defendant for use whenever it should draw the same. These bonds, or part of them, had been at different times used by the defendant as security upon notes made by the defendant company, but these notes had been paid and the bonds redeemed by the company itself, and the bonds had been restored to the trust company as custodian of the defendant. I am unable to see how these bonds can be held to be *issued and outstanding.* If, upon any first day of November, these bonds should be held as collateral by some one, then they would be outstanding at that time, but if the notes upon which they stood as collateral had been paid by the company and the bonds restored to the plaintiff merely as custodian of the defendant, or even held by the company, it would seem to me that they stood simply as bonds authorized by the defendant certified by the plaintiff and not yet delivered. But of these bonds issued and used as collateral, $100,000 were issued and outstanding upon the 1st day of November, 1916, as they were held by the plaintiff as the depository for the Denver National Bank as collateral security for the defendant's obligation. Although these bonds were redeemed by the company upon the nineteenth day of December subsequent, nevertheless, they were outstanding on the first day of November in that year. The plaintiff is entitled to receive from the defendant one per cent thereupon for the purpose of the sinking fund. In other words, bonds issued which had been restored by the defendant not in any way under the provisions of the sinking fund article, should always be deemed under the provisions of this sinking fund article as bonds unissued except as they might have been outstanding on any first day of November. In any event they are not within the terms of the article " issued and outstanding " so as to be subject to this one per cent tax as provided in article 6 of the trust mortgage.

Now, it is further provided where bonds are bought for this sinking fund, pursuant to article 6, that the defendant shall pay to the plaintiff, not the one per cent specified, but five per cent, that is, the interest rate upon the par value of

said bonds and it is claimed that even if these be not bonds then outstanding so as to be subject to the one per cent levied for the sinking fund, they are subject to the five per cent as bonds that had been outstanding, but that had been purchased for the benefit of the sinking fund.

Referring now to article 6 of the trust mortgage, it requires, in addition to the one per cent which must be paid upon all bonds issued and outstanding for the benefit of the sinking fund, the defendant shall pay to the trustee: " An additional sum in like gold coin which shall be equal to the annual interest upon all the bonds purchased by said Trustee or drawn as hereinafter provided in this Article, to be applied by the Trustee, together with any other money in the hands of the Trustee derived from the sale of property covered by this mortgage which may not be otherwise used or applied under the provisions of Section 1 of Article V of this Indenture, to the redemption of said bonds."

It is clear that this provision refers to bonds purchased by the trustee with moneys held by the trustee for the purposes of the sinking fund. Those are not only the moneys required to be contributed by the defendant for the purposes of the sinking fund, but also moneys received from the sale of property covered by the mortgage. There is no provision that this interest charge should apply to any bonds which had been redeemed by the defendant for any other purpose than is required in this sinking fund provision, and it seems to me clear that this railroad company could purchase any amount of bonds outstanding and hold them even for reissue, and if they be deposited with the trust company that they are not bonds *issued and outstanding,* nor are they bonds purchased by the trustee for the benefit of the sinking fund upon which the defendant is required to pay interest for the benefit of that fund. The bonds that are purchased by the trustee for the benefit of the sinking fund are required to be marked by the trustee as non-negotiable and non-transferable. In other words, they are made ineffectual as possible obligations of the company thereafter. That is not so of bonds redeemed by the company itself and not purchased for the benefit of the sinking fund. They are not required so to be marked

and when deposited with the plaintiff for keeping they are in like position as bonds authorized by the defendant and certified by the plaintiff and not yet issued and not outstanding.

Judgment should be directed for the plaintiff for $1,000 and interest from November 1, 1916, with costs.

GREENBAUM, J. (dissenting):

The bonds which plaintiff claims should be subject to the sinking fund provisions of the trust agreement were never sold pursuant to its terms but were deposited with the trust company as collateral security for a note of the defendant, and hence have no relation to the sinking fund.

I think that the judgment should be in favor of the defendant.

Judgment ordered for plaintiff as stated in opinion of CLARKE, P. J.